IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

|  |  |  |
|---|---|---|
| TIVERSA HOLDING CORP. and ROBERT J. BOBACK, | : : | Civil Action No. _____ |
|  | : | Electronically Filed |
| Plaintiffs, | : |  |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
|  | : |  |
| LabMD, INC. and MICHAEL J. DAUGHERTY, | : : |  |
|  | : |  |
| Defendants. | : |  |

## COMPLAINT IN CIVIL ACTION

Plaintiffs Tiversa Holding Corp. ("Tiversa") and Robert J. Boback, through their

undersigned counsel, bring this Complaint against Defendants LabMD, Inc. ("LabMD") and

Michael J. Daugherty, and in support state:

### THE PARTIES

1.     Plaintiff Tiversa is a Delaware corporation with its principal place of business

at 606 Liberty Avenue, Pittsburgh, Pennsylvania 15222.

2.     Plaintiff Robert J. Boback is a resident of Allegheny County, Pennsylvania.

3.     Upon information and belief Defendant LabMD is a Georgia corporation, with its

principal place of business at 2030 Powers Ferry Road, Suite 520, Atlanta, GA 30339.

4.     Upon information and belief Defendant Michael J. Daugherty is a resident of

Fulton County, Georgia.

### JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) in that this

action is a civil action between citizens of different states and the matter in controversy exceeds,

exclusive of interest and costs, the amount of $75,000.00.

6.      Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331, as Plaintiffs are bringing claims under 15 U.S.C. § 1125(a).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the actions of Defendants have caused harm to Plaintiffs, and continue to cause harm to Plaintiffs, whom Defendants are aware are residents of this judicial district.

8.      Defendant LabMD is subject to personal jurisdiction in this Court because Defendant LabMD is a "clinical and anatomic medical laboratory with a national client base." *See* www.michaeljdaugherty.com/about/.  *See also* Trailer for The Devil Inside the Beltway, available at www.michaeljdaugherty.com (stating that LabMD is "a nice business going with a nationwide base"); Video of Heritage Foundation Blogger Brief, available at www.michaeljdaugherty.com/media/ (stating that LabMD has "urology offices around the country").

9.      Defendants LabMD and Mr. Daugherty are subject to personal jurisdiction in this Court because Mr. Daugherty, both individually and in his capacity as President & CEO of LabMD, has purposefully and intentionally engaged in tortious activity specifically regarding Pennsylvania residents (Plaintiffs) and specifically directed at the state of Pennsylvania.  *See infra*.

## FACTS

### *Mr. Boback and Tiversa's Business*

10.      Mr. Boback is the co-founder and CEO of Tiversa.

11.      Tiversa is a cyber-intelligence company that provides, *inter alia*, data protection and review for individuals, corporate entities, and government agencies.

12.     Because Tiversa provides its services to, among others, various governmental agencies, large multi-national corporations, and individuals, Mr. Boback and Tiversa work diligently to earn and maintain reputations for honesty, integrity, and legality in all aspects of their business.

13.     Maintaining such a reputation is critical for Mr. Boback and Tiversa, as world leaders in the cyber-protection business, because Tiversa's clients trust it with finding and protecting information of significant import and sensitivity on a daily basis.

14.     In this regard, Mr. Boback and Tiversa have been recognized for their contributions to law enforcement and national security and received an award from the Federal Bureau of Investigation and Law Enforcement Executive Development Associations ("FBI-LEEDA") for those contributions.

15.     One of the services which Tiversa provides is the capability to search for, locate, and copy files on public peer-to-peer ("P2P") networks.

16.     P2P technology uses the power of the computers that it connects and allows people to share files directly with one another.  However, inadvertent file sharing can occur on P2P networks when computer users share more files than they intend.  For example, the users may only want to share their music files or a large academic report when they access the P2P network, but instead may open all files on their computer's hard drive to access by other uses on the P2P network.

### Mr. Boback and Tiversa's Interactions with LabMD

17.     In 2008, while conducting searches of a P2P network, Tiversa found a 1,718 page document containing healthcare patient social security numbers, insurance information, and treatment codes (the "File").

- 3 -

18.     The File, while created and stored on a LabMD computer, was accessible to Tiversa and others only because that LabMD computer had allowed access to the File via the P2P network which Tiversa was searching.

19.     In May of 2008 Mr. Boback, on behalf of Tiversa, contacted LabMD to alert it to the publicly available nature of the file.  Mr. Boback and Tiversa also provided a copy of the File to LabMD to confirm that it was indeed LabMD's document.

20.     After informing LabMD of the availability of its file, Mr. Boback offered Tiversa's remediation services to LabMD to assist it in securing the File and ensuring that no other breaches of confidentiality took place.

21.     LabMD requested, and Tiversa provided, a contract regarding the cost of remediation.

22.     LabMD did not retain Tiversa's services, and communications between the parties stopped.

### *Mr. Boback Testifies in Washington, D.C.*

23.     In July of 2007, May of 2009, and July of 2009, Mr. Boback testified in front of the United States Congress regarding the extent and magnitude of security breaches that could occur via P2P networks.  Two of these three testimonies were given to the House Oversight and Government Reform Committee.

24.     Upon information and belief, during these hearings, the Federal Trade Commission ("FTC") learned of the extent and magnitude of security breaches that could occur via P2P.

25.     Subsequent to the hearings the FTC visited Tiversa, and attempted to obtain any and all non-redacted files which contained more than 100 Social Security Numbers.

26.     Under threat of federal subpoena all such files, including the File, were provided to the United States Government.

27.     Tiversa has never received any payment, of any form, from the FTC for this activity.

28.     Tiversa did not have any insight or control as to what the FTC was planning to do, or did, with this information once received by the FTC.

### The FTC Investigation

29.     Upon information and belief, in 2009, the FTC began an investigation into LabMD.

30.     That investigation has continued and on August 29, 2013, the FTC filed an administrative complaint against LabMD, alleging that LabMD failed to reasonably protect the security of consumers' personal data, including medical information.

31.     Upon information and belief, the FTC's administrative complaint is based on, *inter alia*, the File.

### Mr. Daugherty and LabMD's Defamatory Statements

32.     On September 17, 2013, Mr. Daugherty is publishing a book entitled "The Devil Inside the Beltway" (the "Book").

33.     In his video "trailer" for the Book, available on Mr. Daugherty's personal website, Mr. Daugherty highlights his position as LabMD's President and CEO and Mr. Daugherty alleges that Tiversa is part of a "Government Funded Data Mining & Surveillance" scheme that engages in "Psychological Warfare" and helps to assist in "Abusive Government Shakedown[s]."  *See* www.michaeljdaugherty.com.  More specifically, Mr. Daugherty alleges

Tiversa is conducting "300 Million Searches per day" for "Homeland Security" and the "Federal Trade Commission." *See id*.

34.     Mr. Daugherty further claims that Tiversa "downloaded" the File "and would not answer our questions unless we hired them, kicked the file over to the feds, and then the federal trade commission began overwhelming our small business, a cancer detection center, with their beltway tactics." *See id*. *See also* Video of Heritage Foundation Blogger Brief (stating that Tiversa and Mr. Boback wouldn't "give [LabMD] any information unless we hired him which I wouldn't do" that "we, to this day, don't feel like our file ever got out" and that "we don't even believe that there was a breach"); www.michaeljdaugherty.com/2012/09/16/the-ftc-is-suing-me/ (alleging that Tiversa "took our file without authorization"); Amy Wenk, *Atlanta Medical Lab Facing Off Against FTC*, Atlanta Business Chronicle, September 7-13, p. 3A, 22A ("'This is a property theft case,' Daugherty said. '[Tiversa] came in and affected our network'"); www.indiegogo.com/projects/the-devil-inside-the-beltway/ (stating, on a website created by Mr. Daugherty, that "[w]hat began with the unauthorized but government-funded procurement of medical data for 9000+ patients from his medical laboratory turned into a government supported, financially draining, extortion attempt"); Interview by Accuracy in Media with Michael J. Daugherty, available at www.michaeljdaugherty.com/media (stating that Tiversa "did not find [the File] out on cyberspace", that "the [F]ile was taken by a government funded study and a group from Dartmouth and a company named Tiversa", and that Tiversa "took" LabMD's property).

35.     Mr. Daugherty further alleges that "the feds" are "paying contractors to surveil for medical files[.]" *See* Trailer for The Devil Inside the Beltway.

36.     In essence, Mr. Daugherty has stated, in many different mediums, that Tiversa illegally accessed and stole LabMD's files, and then extorted LabMD in an attempt to obtain business.  When LabMD refused, according to Mr. Daugherty, Tiversa sent the files to the FTC, to begin an investigation into LabMD.

37.     Upon information and belief the Book will include these same statements, likely in greater detail and longer length.  Further, upon information and belief, excerpts from the Book have already been disseminated to the general public and contain these defamatory statements.

38.     On November 8, 2012, counsel for Tiversa sent a letter to LabMD's in-house counsel regarding the kind of statements discussed in Paragraphs 32-37, as well as the Book.

39.     That letter stated that the kind of statements discussed in Paragraphs 32-37 were false, as well as damaging to Tiversa, and must therefore be halted immediately.

40.     As described in Paragraphs 32-37, Defendants disregarded the November 8, 2012 letter entirely.

41.     The Defendants have willfully, intentionally, wantonly, maliciously, and repeatedly spread their allegations regarding a Pennsylvania resident both throughout this Commonwealth and the country.

42.     Mr. Daugherty and LabMD's accusations regarding Mr. Boback's and Tiversa's conduct are false.

## COUNT I – DEFAMATION

43.     Plaintiffs incorporate Paragraphs 1-42 of their Complaint as if stated in full herein.

44.     The statements made by Mr. Daugherty and LabMD, discussed in Paragraphs 32-37, are defamatory in character as they have diminished the Plaintiffs' reputations – both

commercially and personally – and have hurt the Plaintiffs' business and profession, by, *inter alia*, casting doubt on the Plaintiffs' operations as a businessman and business that operates legally, ethically, and honestly.

45.   The Defendants have published these statements – Mr. Daugherty personally and on behalf of LabMD – both on the internet, in various talks and conferences, and in news publications.

46.   Defendants' statements are directly applicable to the Plaintiffs, as they either name the Plaintiffs directly or make clear reference, in context, to the Plaintiffs.

47.   Any recipient of Defendants' statements – that Plaintiffs have conspired to extort the Defendants – would understand the defamatory meaning of those statements.

48.   Any recipient of Defendants' statements would understand that these statements are to be applied to the Plaintiffs, as the Plaintiffs are either named or implicated in context.

49.   The Plaintiffs have suffered special harm as a result of the publication of these statements, including, but not limited to, a diminished reputation in their field of business.

50.   Plaintiffs are not public figures or public officials.

51.   Defendants, as demonstrated above, have abused a conditionally privileged occasion.

52.   Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT II – SLANDER *PER SE*

53.     Plaintiffs incorporate Paragraphs 1-52 of their Complaint as if stated in full herein.

54.     The spoken words of Defendants, discussed in Paragraphs 32-37, impute both the criminal offense and business misconduct of extortion upon the Plaintiffs.

55.     As stated above, those words darkened the Plaintiffs' reputations as a businessman and business acting with integrity and within the bounds of the law.

56.     Defendants' words are peculiarly harmful to a businessman and business engaged in Plaintiffs' profession.

57.     Plaintiffs' have been harmed by the publication of Defendants' spoken words.

58.     Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT III – TRADE LIBEL

59.     Plaintiffs incorporate Paragraphs 1-58 of their Complaint as if stated in full herein.

60.     The statements made by Defendants, discussed in Paragraphs 32-37, are false.

61.     Defendants made these statements knowing, or reasonably should have known, that their publication would result in pecuniary loss to the Plaintiffs as a result of, *inter alia*, the negative effect the statements would have on Plaintiffs' reputations.

62.     Plaintiffs have suffered pecuniary loss in the form of, *inter alia*, reduced business and a slandered reputation.

63.     Defendants knew their statements were false and/or acted in reckless disregard of the truth or falsity of the statements.

64.     Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT IV – VIOLATION OF 15 U.S.C. § 1125(a)

65.     Plaintiffs incorporate Paragraphs 1-64 of their Complaint as if stated in full herein.

66.     The Defendants, in connection with advertising the Book, made both false and misleading descriptions of fact, as well as false and misleading representations of fact, misrepresenting the nature and characteristic of the Plaintiffs' services and commercial activities by, *inter alia*, making the false statements discussed in Paragraphs 32-37.

67.   The Defendants made these statements in an effort to influence customers to purchase their forthcoming book.

68.   These statements have been disseminated throughout Plaintiffs' industry, Defendants' industry, the book publishing industry, and the general public such as to advertise and promote Plaintiffs' book.

69.   The Plaintiffs have been, and continue to be, damaged by these actions.

70.   Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT V – COMMERCIAL DISPARAGEMENT

71.   Plaintiffs incorporate Paragraphs 1-70 of their Complaint as if stated in full herein.

72.   The statements discussed in Paragraphs 32-37 are false.

73.   Defendants have no privilege that would allow them to make these false statements.

74.   Plaintiffs have suffered a direct pecuniary loss in the form of, *inter alia*, reduced business and a slandered reputation because Defendants' statements attacking Plaintiffs have reduced the marketability of Plaintiffs' services.

75.     Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE OR EXISTING CONTRACTUAL RELATIONS

76.     Plaintiffs incorporate Paragraphs 1-75 of their Complaint as if stated in full herein.

77.     Plaintiffs have existing contractual relations with numerous third parties.

78.     Throughout the course of their business, Plaintiffs are constantly searching for and developing prospective contractual relations with numerous third parties.

79.     The statements made by Defendants, discussed in Paragraphs 32-37, were purposefully made, and specifically intended to harm Plaintiffs' existing contractual relations as well as prevent Plaintiffs from developing prospective contractual relations.

80.     The statements made by Defendants were false, and Defendants had no privilege or justification for making them.

81.     The Plaintiffs have suffered, and continue to suffer, actual legal damages as a result of the Defendants' statements in the form of, *inter alia*, reduced current and future business relationships.

82.     Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an

appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Robert Boback v. LabMD and Michael J. Daugherty)

83.     Mr. Boback incorporates Paragraphs 1-82 of the Complaint as if stated in full herein.

84.     The statements discussed in Paragraphs 32-37 were intentionally made.

85.     *Inter alia*, the falsity of these statements, combined with the serious nature of their content and the significant repercussions the statements have had on Mr. Boback, render the conduct of making the statements extreme and outrageous.

86.     Mr. Boback has suffered severe emotional distress as a result of Defendants' statements.

87.     Mr. Boback has suffered physical injury as a result of Defendants' statements in the form of, *inter alia*, exhaustion due to inability to sleep or relax due to worry caused by Defendants' statements.

88.     Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, in an amount greater than $75,000.00, including punitive damages, attorneys' fees, and disgorgement of profits, as well as any and all other relief deemed justified by this Court.

## COUNT VIII – INJUNCTIVE RELIEF

89.     Plaintiffs incorporate Paragraphs 1-88 of their Complaint as if stated in full herein.

90.     If Defendants' book is allowed to continue to be published it will cause Plaintiffs to suffer an irreparable injury in the form of continued and pervasive harm to their reputations.

91.     While legal damages may properly account for all of the defamatory and otherwise improper statements made by Defendants to date, there is no possible adequate legal remedy for the continuing wrong that will occur if Defendants are allowed to continue publishing the Book.

92.     While Plaintiffs will suffer significant hardship if Defendants continue to publish the Book, stopping Defendants from making false, defamatory statements imputes no hardship on the Defendants.

93.     It is in the public interest to stop false and defamatory statements so that the public can be provided with accurate information in making any and all analyses regarding their choices of businesses and individuals with which to interact.

94.     Defendants' conduct, as described above, is outrageous, and demonstrates intentionally willful, wanton, and reckless behavior on Defendants' part.  Defendants had an appreciation for, and consciously disregarded, the risk of harm to Plaintiffs which their conduct entailed.

WHEREFORE, Plaintiffs request that this Court enter a permanent injunction: (1) halting the publication of Defendants' Book OR (2) requiring Defendants to revise the Book such as to remove any and all references, either express or implied, to: (A) Tiversa "extorting" Defendants in any manner, (B) Tiversa engaging in a conspiracy of any kind with the United States Government or any other entity, (C) Tiversa "surveiling" any information, or (D) that Tiversa "stole" or otherwise improperly accessed the File.  Plaintiffs also request attorneys' fees, disgorgement of profits, and any and all other relief deemed justified by this Court.


**PLAINTIFFS DEMAND A JURY ON ALL ISSUES TRIABLE BY JURY.**


REED SMITH LLP

/s/ Jarrod D. Shaw
Jarrod D. Shaw
Pa. ID No. 93459

225 Fifth Avenue
Pittsburgh, PA  15222
(412) 288-3131

Date: September 5, 2013                    *Counsel for Plaintiffs*