**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIVERSA HOLDING CORP. and | ) | |
| ROBERT J. BOBACK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1296 |
| | ) | Judge Nora Barry Fischer |
| LABMD, INC. and MICHAEL J. | ) | |
| DAUGHERTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

Presently before the Court is the Motion to Dismiss (Docket No. 36) filed by LabMD,

Inc. ("LabMD") and Michael J. Daugherty ("Daugherty") (*collectively*, "Defendants"),  pursuant

to Federal Rule of Civil Procedure 12(b)(6) with respect to all claims pled in Tiversa Holding

Corp. ("Tiversa") and Robert J. Boback's ("Boback") (*collectively*, "Plaintiffs), First Amended

Complaint of December 24, 2013.  (Docket No. 31).  Plaintiffs plead claims under the laws of

the Commonwealth of Pennsylvania for defamation, slander *per se*, commercial disparagement,

and trade libel, and seek in excess of $75,000.00 in damages, as well as injunctive relief.  (*Id.*).

This Court exercises subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §

1332 (diversity).  For the following reasons, Defendants' Motion to Dismiss is DENIED.

**II.    PROCEDURAL AND FACTUAL BACKGROUND**

Sometime in 2008, Tiversa – a Delaware corporation with its principal place of business

in Pittsburgh, Pennsylvania, and operating as a cyber-intelligence company providing "data

protection and review" for clients – happened upon a file belonging to LabMD (the "File").

(Docket No. 31 at 1 – 2).  Tiversa had been conducting a search of peer-to-peer networks on behalf of a client, and Tiversa's search terms resulted in the discovery of the File on a computer in San Diego, California.  (*Id.* at 2).  The File was comprised of approximately 1,718 pages of "healthcare patient social security numbers, insurance information, and treatment codes."  (*Id.*).  The File was entitled "Insurance Aging" and was located on computers in Arizona, Costa Rica, and London.  (*Id.* at 3).

Tiversa identified LabMD as the source of the File.  At that time, LabMD was a Georgia corporation, with its principal place of business in Atlanta, Georgia.  (Docket No. 37 at 10).  It functioned as a cancer detection facility performing testing and diagnostic services for urologists in several states.  (*Id.*).  Tiversa concluded that LabMD inadvertently shared the File via a peer-to-peer file-sharing program downloaded onto a LabMD computer.  (Docket No. 31 at 3).  Following discovery of the File, and the sensitive information contained therein, Mr. Boback contacted LabMD, and provided LabMD with a copy of the File.  (Docket No. 31 at 3).  Mr. Boback offered Tiversa's services to LabMD, as well.  (*Id.* at 3).  LabMD requested a quote for the cost of Tiversa's services, but ultimately declined to engage Tiversa.  (*Id.*).  No further communications ensued.  (*Id.*).

As a part of investigations into security breaches resulting from the use of peer-to-peer networks, the Federal Trade Commission ("FTC") "visited Tiversa, and attempted to obtain any and all non-redacted files which contained more than 100 Social Security Numbers."  (*Id.* at 4).  Tiversa did not turn over the File.  (*Id.*).  An entity identified as the "Privacy Institute" received a copy of the File.[1]  (*Id.*).  A civil investigative demand ("CID") was subsequently issued by the

---

[1]      The First Amended Complaint appears to implicate, but does not explicitly state, that the Privacy Institute was a recipient of the File.  (Docket No. 31 at 4).  The First Amended Complaint additionally fails to indicate under what circumstances the Privacy Institute came into possession of the File, how the Privacy Institute was related to Plaintiffs, what was the function of the Privacy Institute, or why the FTC requested the File from the Privacy

FTC to the Privacy Institute, and on August 18, 2009, the Privacy Institute provided the File to the FTC.[2]  (*Id.*).  Following an investigation into LabMD, on or about August 29, 2013 the FTC filed an administrative complaint against the company for failure to use reasonable measures to protect the security of sensitive consumer data (i.e. the File).  (Docket No. 31 at 4).

On September 24, 2013, Mr. Dougherty authored "The Devil Inside the Beltway" (the "Book").  (*Id.*).  The Book was marketed as a "Shocking Expose of the US Government's Surveillance and Overreach into Cybersecurity, Medicine and Small Business."  (Docket No. 31 at 4 – 5).  As part of his promotional effort for the book, Mr. Dougherty created a website that included a video "trailer" including commentary on Tiversa's interaction with LabMD with respect to the File.  (*Id.* at 5).  Among other things, the video included allegations that Tiversa was part of a "Government Funded Data Mining & Surveillance" scheme, engaged in "Psychological Warfare," and assisted with "Abusive Government Shakedown[s]."  (*Id.*).

Other promotional material included accusations by Mr. Dougherty that Tiversa's actions constituted "property theft," that Tiversa "came in and affected our network," and that when LabMD declined Tiversa's services, Tiversa gave the File to federal authorities as part of its "extortion attempt."  (*Id.* at 5 – 6).  Additionally, it was alleged that Tiversa did not find the File "out in cyberspace," but "took" LabMD's property as part of a "government funded study."  (*Id.* at 6).

The Book itself continued similar commentary on Tiversa's conduct towards LabMD. Mr. Dougherty indicated therein that Mr. Boback was a "con artist," that LabMD was

---

Institute.  (*Id.*).  In responsive briefing, Plaintiffs indicate that they did turn the File over to the Privacy Institute. (Docket No. 40 at 8).

[2]      The First Amended Complaint appears to implicate, but does not explicitly state, that the CID request included the File and that the Privacy Institute thereafter provided the file.  (Docket No. 31 at 4).  Further, the First Amended Complaint fails to provide the exact nature of the Privacy Institute's response to the CID, and in what form it provided the File to the FTC.  (*Id.*).  In responsive briefing, Plaintiffs indicate that the Privacy Institute provided the File to the FTC.  (Docket No. 40 at 8).

"entrapped" by Tiversa's conduct, that Tiversa's business was a "shakedown," that Tiversa engaged in "questionable practices," that Tiversa "regularly contacted companies whose file they had taken in order to solicit business," that Tiversa's use of the File constituted "theft," that Tiversa "showed our file to Congress," that Tiversa "took" others' property, and that Tiversa was "snooping on the internet for other people's property or sensitive data."  (Docket No. 31 at 7 – 9).

Mr. Dougherty continued his promotional efforts for the Book following its publication, and also actively engaged in public commentary regarding his continued ill will towards Tiversa. His statements were substantially similar to the aforementioned, including statements characterizing Tiversa's actions as extortion, collusion in a government conspiracy, and illegal access of private information.  (*Id.* at 9 – 10).  Tiversa twice sent letters to Mr. Dougherty on November 8, 2012 and October 17, 2013 informing Mr. Dougherty that his statements about Tiversa were false, damaging, and harmful to Tiversa, and should be halted.  (*Id.* at 11).  Neither Mr. Dougherty nor LabMD responded to the letters.  (*Id.* at 11 – 12).

Plaintiffs thereafter filed a Complaint in this Court on September 5, 2013 against Defendants.  (Docket No. 1).  Plaintiff's First Amended Complaint followed on December 24, 2013, and alleged in Counts I through III that Defendants were liable for damage resulting from:

1.  Defamation under 42 PA. CONS. STAT. §§ 8341, *et seq*;

2.  Slander *per se* under the common law of Pennsylvania; and,

3.  Commercial Disparagement/ Trade Libel under the common law of Pennsylvania.

(Docket No. 31 at 16 – 19).

Under Count IV of the First Amended Complaint, Plaintiffs also seek injunctive relief in addition to monetary damages.  (*Id.* at 19 – 20).  In response, Defendants filed a Motion to

Dismiss on January 21, 2014, with an accompanying brief.  (Docket Nos. 36, 37).  Plaintiffs filed

a Brief in Opposition on February 11, 2014.  (Docket No. 40).  A Reply Brief was filed by

Defendants on February 25, 2014.  (Docket No. 41).  Supplemental briefs were filed by Plaintiffs

and Defendants, respectively, on March 24 and 26, 2014.  (Docket Nos. 48, 51).  The matter is

now fully briefed and ripe for disposition.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and

plain statement of a claim, and show that the pleader is entitled to relief.  Dismissal of a

complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6)

when a claimant fails to sufficiently state a claim upon which relief can be granted.  Avoiding

dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual

matter" to allow the case to move beyond the pleading stage of litigation; the pleader must

"'nudge his or her claims across the line from conceivable to plausible.'"  *Phillips v. County of*

*Allegheny*, 515 F. 3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550

U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a

two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210 – 11 (3d Cir. 2009).  First,

factual and legal elements of a claim must be distinguished.  *Id.*  Second, it must be determined

whether the facts as alleged support a "plausible claim for relief."  *Id.*  In making the latter

determination, the court must be mindful that the matter pleaded need not include "detailed

factual allegations," *Phillips*, 515 F. 3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court

must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most

favorable to the non-moving party.  *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F. 3d

5

651, 653 (3d Cir. 2003)).  Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F. 3d at 213 (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)).  A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of . . .  facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible.  *Phillips*, 515 F. 3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Phillips*, 515 F. 3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56).  Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief."  *Id.* at 232.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Fowler*, 578 F. 3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.   DISCUSSION

In the present Motion to Dismiss[3] proceedings, Defendants argue that Counts I through III of Plaintiffs' First Amended Complaint should be dismissed in accordance with Rule 12(b)(6) of the Federal Rules of Civil procedure because the facts as pled by Plaintiffs do not show an entitlement to relief under the relevant laws.  (Docket No. 37 at 28 – 38).  Further, Plaintiffs' request for an injunction at Count IV should be dismissed because such an award would be an unconstitutional prior restraint on speech in violation of the First Amendment to the Constitution

---

[3]     Although Defendants attack the propriety of this Court's exercise of personal jurisdiction, as well as the propriety of the Western District of Pennsylvania as the venue for the current action in the Motion to Dismiss, such arguments under Rules 12(b)(2) and (3) of the Federal Rules of Civil procedure are subsequently withdrawn in Defendants' Reply Brief (Docket No. 42 at  10), and will not, therefore, be addressed by the Court in this Opinion.

of the United States.  (Docket No. 37 at 38 – 40).  Plaintiffs respond by asserting that they have provided adequate factual information to create a plausible entitlement to relief, and moreover that the request for an injunction in this case would not constitute a prior restraint on free speech.  (Docket No. 40 at 17 – 30).

    A.  Capable of Defamatory Meaning

Defamation under the law of the Commonwealth of Pennsylvania requires Plaintiffs to make specific showings.  To this end, Plaintiffs must make a *prima facie* demonstration of: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; and, (5) the understanding by the recipient of it as intended to be applied to the plaintiff.  *Graboff v. Colleran Firm*, -- F. 3d --, 2014 WL 642951 at *4 (3d Cir. Feb. 20, 2014) (quoting *Tucker v. Fischbein*, 237 F. 3d 275, 281 (3d Cir. 2001); 42 PA. CONS. STAT. § 8343(a)).  Defendants first contest Plaintiffs' *prima facie* showing, at Count I, of the defamatory character of Mr. Dougherty's communications relative to Tiversa's interactions with LabMD.  (Docket No. 37 at 28 – 32).

As an initial matter, it is for the trial court to determine whether a statement is *capable* of defamatory meaning.  *Graboff*, 2014 WL 642951 at *4 (citing *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A. 2d 213, 215 – 16 (Pa. 1981)).  *See also Burton v. Teleflex, Inc.*, 707 F. 3d 417, 434 (3d Cir. 2013) ("threshold issue").  A statement may properly be considered defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Graboff*, 2014 WL 642951 at *4 (quoting *Tucker*, 237 F. 3d at 282).  A statement may not be defamatory, however,

if certain conditions are demonstrated by a defendant.    Defendants argue that two such conditions exist.  (Docket No. 37 at 28 – 32).

First, a statement may not be actionable when a defendant shows that it was purely opinion.  *Green v. Mizner*, 692 A. 2d 169, 174 (Pa. Super. Ct. 1997) ("[S]tatements of opinion, without more, are not actionable."). Yet, even opinions may constitute defamation if "reasonably understood to imply the existence of undisclosed defamatory facts."  *Id.*  Further explaining this principle, the court in *Mizner* quoted the Restatement (Second) of Torts § 566 – adopted by Pennsylvania courts – as follows:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

*Mizner*, 692 A. 2d at 174 (quoting Restatement (Second) of Torts § 566, comment (c)). Additionally, where a plausible defamatory interpretation of a statement co-exists with a plausible non-defamatory interpretation, the issue must be resolved by a jury.  *Id.*

In *Mizner*, the Pennsylvania Superior Court found that an alleged statement of opinion was capable of defamatory meaning, because a reader could reasonably infer the existence of undisclosed facts.   *Mizner*, 692 A. 2d at 175.  In *Mizner*, the defendant stated that the plaintiff city councilman spent public funds "illegally," and "unilaterally and without knowledge of the other members of City Council," in violation of state law.  *Id.*  These statements were considered capable of defamatory meaning.  *Id.*  However, as has been pointed out by the Pennsylvania

Supreme Court, simply using a term such as "blackmail," which might imply some degree of criminal behavior, is not itself necessarily adequate to impart upon a statement a defamatory character. *Rush v. Philadelphia Newspapers, Inc.*, 732 A. 2d 648, 653 (Pa. 1999) (citing *Greenbelt Coop. Publ'g Assn., Inc. v. Bresler*, 398 U.S. 6, 13 – 14 (1970)). Nonetheless, words and phrases must be given the "significance that other people are likely to attribute to them." *Krajewski v. Gusoff*, 53 A. 3d 793, 802 (Pa. Super. Ct. 2012); *Davis v. Resources for Human Development, Inc.*, 770 A. 2d 353, 357 (Pa. Super. Ct. 2001) (finding capable of defamatory meaning a letter written to a former member of a volunteer board which included the statement that the plaintiff would be sent a "bill for the items that were missing out of [her hotel] room," which could reasonably be interpreted as implying the plaintiff had committed theft.).

Here, Plaintiffs put forth numerous examples of allegedly defamatory statements made by Mr. Dougherty. The statements range from mere insults to accusations of criminal activity. Defendants argue that these statements by Mr. Dougherty – when viewed in the context in which the statements were made – could not be susceptible to any interpretation other than that of opinion and hyperbole. (Docket Nos. 37, 42). Based upon the facts as pled by Plaintiffs in their First Amended Complaint, the Court however finds multiple statements capable of defamatory meaning.

Tiversa, a company providing data protection and review services, and styling itself as a cyber-intelligence company, is accused of using proprietary software to illegally search private files and use said files to extort other companies into engaging Tiversa's services. (Docket No. 31 at ¶¶ 27-35). Tiversa is also accused of collusion in government shakedowns involving the FTC. (*Id.* at ¶¶ 29, 33). Given Tiversa's line of business, it is undisputable that such statements, as pled by Plaintiffs, could clearly damage Tiversa's reputation and motivate current and/or

potential clients to avoid interacting with Plaintiffs.   *See Krajewski*, 53 A. 3d at 805 ("A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession.").   Defendants' arguments notwithstanding, the statements appearing in the Book and other promotional materials disseminated publicly by Mr. Dougherty could reasonably be interpreted by an audience – anyone listening to the radio, using the internet, or purchasing books – that Plaintiffs were secretly stealing files from otherwise uncompromised private networks to illegally force private entities to purchase unnecessary services in return for not being reported to federal authorities.   As the Court must accept all factual statements in Plaintiffs' First Amended Complaint as true, *Revell v. Port Auth. of New York, New Jersey*, 598 F. 3d 128, 134 (3d Cir. 2010) (citing *Gross v. German Found. Indus. Initiative*, 549 F. 3d 605, 610 (3d Cir. 2008)), the Court can conclude nothing other than that many of Defendants' statements went beyond mere opinion.

Second, defamation will not lie when statements made by a defendant were "substantially true."   *Graboff*, 2014 WL 642951 at *4 (citing 42 PA. CONS. STAT. § 8343(b)(1); *Dunlap v. Philadelphia Newspapers, Inc.*, 448 A. 2d 6, 15 (Pa. Super. Ct. 1982)).   In order to determine truthfulness, the alleged defamatory statement must be "viewed in context," because the fact that a statement may be "literally accurate" will not save a defendant where "the implication of the communication as a whole was false."   *Id.* (citing *Baker v. Lafayette College*, 532 A. 2d 399, 402 (Pa. 1987); *Dunlap*, 448 A. 2d at 15).   The Court must consider the effect of a publication, in its entirety, upon the minds of its audience.   *Green v. Mizner*, 692 A. 2d at 172.

In the present case, the Court notes that Plaintiffs' First Amended Complaint indicates that the File was not found intentionally, but inadvertently while serving a client; Plaintiffs did,

in fact, provide a copy of the File to Defendants when offering services; the File was not taken from Defendants' network, but was publicly available on other computers on a peer-to-peer network; and, the File was not provided to the FTC by Plaintiffs, but by another party.  (Docket No. 31 at ¶¶ 11-26).  Without rehashing all of the statements made by Mr. Dougherty in the Book and in publicly disseminated promotional materials, and accepting all factual allegations by Plaintiffs as true, in this Court's mind, Plaintiffs have adequately averred that the statements made by Mr. Dougherty were false.  (*Id.* at ¶¶ 11-43).  As such, and in light of the Court's finding that many of Mr. Dougherty's statements went beyond mere opinions, the Court finds that the Book and Mr. Dougherty's public statements promoting same were sufficiently capable of defamatory meaning.

B.  Actual Malice

Defendants next argue that Plaintiffs were public figures, and failed to provide evidence of "actual malice," as required by law to support claims under Counts I through III of the First Amended Complaint.  (Docket No. 37 at 32 – 38).  When a plaintiff is considered to be a "public figure" for purposes of defamation actions, the plaintiff must demonstrate that an offending statement was made with actual malice – "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not."  *Lewis v. Philadelphia Newspapers, Inc.*, 833 A. 2d 185, 191 (Pa. Super. Ct. 2003) (quoting *Curran v. Philadelphia Newspapers, Inc.*, 546 A. 2d 639, 642 (Pa. Super. Ct. 1988); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 – 80 (1964)).  Negligence is not enough.  *Blackwell v. Eskin*, 916 A. 2d 1123, 1125 (Pa. Super. Ct. 2007).  Additionally, falsity and/or ill-will, while probative, are not necessarily sufficient to establish actual malice.  *Lewis*, 833 A. 2d at 192.  The actual malice standard allows for the

protection of robust public debate which includes "imaginative expression" and "rhetorical hyperbole." *Id.* at 191.

It is the Court's responsibility to determine whether actual malice has been illustrated with clear and convincing evidence. *Id.* at 192 (citing *Sprague v. Walter*, 656 A. 2d 890, 904 (Pa. Super. Ct. 1995)). "Moreover, evidence adduced is not adjudged by an objective standard; rather, 'actual malice' must be proven applying a *subjective* standard by evidence 'that *the defendant in fact entertained serious doubts as to the truth of his publication*.'" *Id.* (citing *Curran*, 546 A. 2d at 642). Actual malice may be shown by circumstantial evidence, but the evidence must "tend to establish fabrication, or at least that the publisher had 'obvious reasons to doubt the veracity'" of his statements or the bases thereof. *Lewis*, 833 A. 2d at 192 (citing *Sprague*, 656 A. 2d at 904). Recklessness "in the context of actual malice is not easily shown," *Blackwell*, 916 A. 2d at 1125, and "it will be a rare circumstance that a plaintiff will be successful in proving awareness of falsehood from the mouth of the defendant." *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 438 (E.D. Pa. 2003). As such, "objective circumstantial evidence can suffice to demonstrate actual malice." *Id.* (quoting *Shiavone Constr. Co. v. Time, Inc.*, 847 F. 2d 1069, 1089 – 90 (3d Cir. 1988)). Neither can one "escape liability by testifying that he published the article with a belief that the statements were true." *Franklin Prescriptions*, 267 F. Supp. 2d at 438 (citing *Shiavone*, 847 F. 2d at 1089 – 90).

While the Court reserves judgment with respect to Plaintiffs' status as public figures prior to discovery, the Court notes that even if Plaintiffs were public figures for purposes of this action, actual malice is adequately pled in the First Amended Complaint. (Docket No. 31 at ¶¶ 64-81). To this end, Plaintiffs allege that Defendants received direct notices from Plaintiffs both before and after publication of the Book which advised that Mr. Dougherty was spreading false

information about the nature of Plaintiffs' work and their interactions with LabMD. (Docket No. 31 at ¶¶ 36-43). These letters went without response, and Mr. Dougherty did not change the nature or content of his publications. (*Id.*). Plaintiffs also averred that Mr. Dougherty, having personally interacted with Plaintiffs, was well aware of the facts and consciously disregarded such in the Book and his promotional efforts. (*Id.* at ¶¶ 16-19). Given the Court's duty to accept all of Plaintiffs' factual allegations as true and to draw all inferences therefrom in Plaintiffs' favor, the Court is satisfied at this stage in the litigation that Plaintiffs have met their burden of pleading actual malice.

        C.  Injunctive Relief

Defendants lastly argue that Count IV of the First Amended Complaint should be dismissed. Defendants contend that the injunction sought by Plaintiffs would constitute an impermissible prior restraint on free speech and that any such injunctive relief potentially awarded in this case would not be upheld even if it is determined that Defendants defamed Plaintiffs. (Docket No. 37 at 38-40). On this point, the parties debate the applicability of a number of judicial decisions to analyze if the possible award of injunctive relief in the present factual situation would be unconstitutional. (Docket Nos. 37, 40, 42). Nevertheless, the Court need not decide this dispute at the Motion to Dismiss stage, because the issuance of any injunction as a potential remedy is contingent upon the ultimate success of Plaintiffs' defamation claims. Accordingly, Defendants' Motion to Dismiss Count IV is denied, without prejudice.

V.   CONCLUSION

Based upon the foregoing, accepting all factual allegations by Plaintiffs as true, and drawing all inferences therefrom in favor of Plaintiffs as the non-moving party, the Court finds that Plaintiffs have pled sufficient facts to demonstrate a plausible right to recovery against

Defendants for defamation.   Accordingly, Defendants' Motion to Dismiss (Docket No. 36)

Plaintiffs' First Amended Complaint (Docket No. 31) is denied.   An appropriate Order follows.


<div style="margin-left: 50%;">

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

</div>


Dated: April 21, 2014

cc/ecf: All counsel of record.